IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–01654–EWN
(Bankruptcy Case No. 00-23048)


NESBIT LEE LACY, a/k/a LEE LACY,

    Debtor,

NESBIT LEE LACY,

    Appellant,

v.

STINKY LOVE, INC.,

    Appellee.

_____

### ORDER AND MEMORANDUM OF DECISION
_____

This is an appeal from an order of the bankruptcy court entered in Appellant Nesbit Lee Lacy's Chapter 11 proceedings, granting Appellee Stinky Love, Inc.'s motion for production of a closing statement (hereinafter the "Order"). Jurisdiction is premised upon 28 U.S.C. § 158 (2006).

### FACTS

I review only the relevant facts of this tortured bankruptcy proceeding. Unfortunately, the parties' presentation of the facts is woefully inadequate; thus, I am forced to occasionally rely upon factual accounts from orders written by other courts concerning the case. *See In re*

*Winslow*, 186 B.R. 716, 721 (D. Colo. 1995) (taking "judicial notice of the bankruptcy court's records and files, as well as those of this court resulting from the many appeals the debtors have taken from the bankruptcy court's rulings"). As a court in this district explained:

> The background of the dispute between these parties is a failed movie production. [Appellee], formed by the producers of the movie "Love Stinks," had a contract with Independent Artist Company, LLC ("IAC"), owned by [Appellant], for payment by IAC of $5,000,000 of the movie's marketing budget. The payment was not made and the revenues from the movie were less than the costs and expenses.

*Lacy v. Stinky Love (In re Lacy)*, 304 B.R. 439, 441 (D. Colo. 2004).

On November 1, 2000, Appellant filed a voluntary petition for Chapter 11 relief pursuant to the United States Bankruptcy Code, 11 U.S.C. § 101. (Opening Br. of Appellant Nesbit Lee Lacy at 3 [filed Sept. 29, 2006] [hereinafter "Appellant's Br."]; Appellee's Answer Br. at 2 [filed Oct. 17, 2006] [hereinafter "Appellee's Resp."].) Appellee was Appellant's principal creditor and sought payment from Appellant, individually, in an action in a California state court which was pending when Appellant filed his Chapter 11 petition. (R. on Appeal [filed Aug. 21, 2006] [hereinafter "R. on Appeal"], Docket No. 259 at 2 [Convert Order].) *Lacy*, 304 B.R. at 441. In August and September of 2001, the bankruptcy court confirmed Appellant's Chapter 11 plan of reorganization (hereinafter "the Plan"). (Appellant's Br. at 3; Appellee's Resp. 2.) On June 26, 2002, the bankruptcy court entered a final decree in this case. (R. on Appeal, Docket No. 207 [Final Decree].) On September 16, 2002, judgment entered in the Superior Court for Los Angeles County requiring Appellant to pay Appellee $5,735,685. *Lacy*, 304 B.R. at 441.

Appellee filed a timely appeal, the outcome of which neither party discloses.  (*Id.*; *see* Appellant's Br; Appellee's Resp.)

During the course the bankruptcy proceedings, the bankruptcy court noted on several occasions that Appellant's actions were unethical and calculated to game the system.  For instance, in an August 21, 2003 order, the court observed, "[Appellant] is nimble at procedural and transactional gymnastics, but improperly manipulative of the bankruptcy system and abusive toward his principal creditor/adversary, [Appellee]."  (R. on Appeal, Docket No. 259 at 2 [Convert Order].)  Similarly, on July 8, 2005, the bankruptcy court found Appellant in contempt for knowingly, willfully, and intentionally violating the terms of the Plan and the court's earlier order.  (*Id.*, Docket No. 781 [Contempt Order].).

On November 7, 2005, Appellant, Appellee, and Appellee's president, Jeff Franklin, entered into a settlement agreement (hereinafter the "Settlement") which relates, *inter alia*, the following facts: (1) Appellee holds both an allowed unsecured class 7(b) claim under the Plan in the amount of $6,259,769.00 (the "Claim") and a final judgment entered in favor of Appellee against Appellant and others by a California state court in the amount of $6,259,769.00 (the "Judgment"); and (2) the parties continue to be engaged in state court and bankruptcy litigation. (Appellant's Br., Ex. A at 1 [Settlement].)  Further:

> [Appellant, Appellee], and Franklin now consider it to be in their own respective best interests to fully and finally settle and compromise any and all claims and causes of action by and between them including but not limited to all claims and causes of action which have been, or could have been asserted by [Appellee] and/or [Appellant] with respect to the Claim, the Judgment, the Plan, any and all pending California Litigation and any and all pending Bankruptcy Litigation, including all claims, defenses, setoffs and counterclaims to eliminate the

>uncertainty of further litigation and the accrual of additional court costs and attorneys' fees incidental thereto . . . .

(*Id.*)

>The Settlement requires Appellant to pay Appellee $5,725,000 and states:

>>Upon receipt of the . . . Payment, [Appellee] shall cause its Claim and all Judgments entered in the California Litigation to be satisfied in full and released of record, as applicable, and shall cause all Bankruptcy Litigation against [Appellant] . . . in which [Appellee] is a Plaintiff or Movant, as applicable, to be dismissed without prejudice and [Appellant] shall cause all pending appeals in the Bankruptcy Litigation to be dismissed with prejudice.

>>[Appellee] acknowledges that the . . . Payment will be derived from a refinancing or sale of [Appellant's] remaining assets including the Sullivan Canyon property, the Sierra Alta property and the Renaissance stock.

(*Id.*, Ex. A at 2 [Settlement].) Additionally, under the Settlement, Appellant is to convey all rights to the movie *Love Stinks*. (*Id.*, Ex. A at 4 [Settlement].) Finally, the Settlement provides that "[e]ach of the parties shall execute such additional documents and perform such further acts as may be reasonably necessary to give effect to the purposes and provisions of this Agreement." (*Id.*, Ex. A at 7 [Settlement].) On February 22, 2006, the bankruptcy court approved the Settlement. (R. on Appeal, Docket No. 875 [Settlement Approval].)

Appellant subsequently sold his Sullivan Canyon property and paid Appellee in accordance with the Settlement. (Appellant's Br. at 6; Appellee's Resp. at 5.) According to Appellee, however, Appellant has not performed the reconveyance of *Love Stinks*. (*Id.*) Appellant fervently disagrees, arguing proof of the reconveyance is the assignment prepared by counsel for Appellee and signed by Appellant. (Appellant's Br., Ex. A at 11–23 [Assignment].)

At some point, Appellee requested from Appellant a copy of the closing statement for the sale of the Sullivan Canyon property (the "Closing Statement"), and Appellant refused. (*Id.* at 6; Appellee's Resp. at 5–6.) On August 8, 2006, the bankruptcy court granted Appellee's motion for an order directing Appellant to produce a copy of the Closing Statement, reasoning that production was proper under: (1) 11 U.S.C. § 1142(b), which allows the court to order a party to produce "any instrument required to effect a transfer of property dealt with by a confirmed plan;" and (2) the terms of the Settlement, because the Closing Statement is a document "reasonably necessary to give effect to the purposes and provisions of the [Settlement]."[1] (R. on Appeal, Docket No. 911 [Order to Produce Closing Statement].) On August 21, 2006, Appellant appealed the bankruptcy court's order. (Notice of Appeal [filed Aug. 21, 2006].) On September 29, 2006, Appellant filed her opening brief, arguing the bankruptcy court did not have the authority to compel production of the Closing Statement under the Bankruptcy Code, the Plan, or the Settlement. (Appellant's Br. at 7–11.) On October 17, 2006, Appellee responded to the motion. (Appellee's Resp.) On October 23, 2006, Appellant replied in support of his motion. (Reply Br. of Appellant Nesbit Lee Lacy [filed Oct. 23, 2006] [hereinafter "Appellant's Reply"].)

---

[1] The bankruptcy court also noted that given Appellant's "pattern of misconduct in this case and with respect to his compliance with his confirmed Plan," production of the Closing Statement "is consistent with the performance under the Plan." (*Id.*)

**ANALYSIS**

*1.    Standard of Review*

On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions of law *de novo*. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir. 1986). Regarding the bankruptcy court's findings of fundamental facts, the district court is to review them under the deferential clearly erroneous standard. *In re Hedged-Investments Assocs., Inc.*, 380 F.3d 1292, 1297 (10th Cir. 2004).

*2.    Evaluation of Claims*

As a preliminary matter, Appellee asserts that the Order is too inconsequential to be appealed. (Appellee's Resp. at 6–8.) Appellant counters that the Order is significant because it conflicts with the Settlement and subjects him to potential pecuniary loss. (Appellant's Reply at 2–3.) Because I find Appellant does not have standing to appeal the Order, I need not address whether the Bankruptcy Court's grant of Appellant's motion to order production of the Closing Statement was in error.

To have standing to appeal an order of a bankruptcy court, the appellant must show that he is a "person aggrieved," meaning a person "whose rights or interest are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 949 (10th Cir. 1989) (internal quotations omitted); *accord Official Comm. of Unsecured Creditors of W. Pac. Airlines v. W. Pac. Airlines (In re W. Pac. Airlines)*, 219 B.R. 577 (D. Colo. 1998); *see Bennet & Fairshter, LLP v. Stinky Love, Inc. (In re Lacy)*, 335 B.R. 729, 737 (B.A.P. 10th Cir. 2006) (noting "[a]ppellant bears the burden of establishing

standing on appeal"). "The 'person aggrieved' test is meant to be a limitation on appellate standing in order to avoid 'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'" *Lopez v. Behles (In re Am. Ready Mix)*, 14 F.3d 1497, 1500 (10th Cir. 1994) (quoting *Holmes*, 881 F.2d at 940).

Appellant's contention that the Order contradicts the terms of the Settlement simply cannot serve to establish jurisdiction for his appeal without the requisite showing of pecuniary loss, which Appellant fails to make. *See Holmes*, 881 F.2d at 949. Appellant vaguely argues that the Order subjects him to pecuniary loss because he has paid a substantial sum of money for settlement and complete release from all claims by Appellee, but, nonetheless, continues to be "enslaved" by Appellee's demands. (Appellant's Reply at 3.) However, Appellant fails to explain the particular pecuniary loss he would suffer by producing the Closing Statement. (*See id.*) If, based on the Closing Statement, the bankruptcy judge permits Appellee to pursue additional claims against Appellant, he *may* then have a viable argument for potential pecuniary loss. Under the circumstances, however, the Order only directs Appellant to copy a document and give it to Appellee. Additionally, I note any legal fees accrued by Appellant in this appeal process are not due to the Order, but to Appellant's own faulty judgment in choosing to pursue this action. Based on the foregoing, I find Appellant does not have standing to appeal the bankruptcy court's order to produce the Closing Statement.

### 3. *Conclusion*

Based on the foregoing, it is therefore ORDERED that the Appellant's appeal (#7) from the Bankruptcy Court's August 8, 2006 Order is DENIED.

Dated this 31st day of May, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge